JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO ROMO, on behalf of himself and on behalf of a Class of all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CBRE GROUP, INC., a Delaware Corporation; and DOES 1 through 100, inclusive<br><br>Defendants. | CASE NO. 8:18-cv-00237-JLS-KES<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE THE CLASS ACTION ALLEGATIONS, AND STAY PROCEEDINGS (Doc. 19)** |

Before the Court is a Motion to Compel Arbitration, Strike the Class Action Allegations, and Stay the Proceedings filed by Defendant CBRE Group, Inc. ("CBRE") (Mot., Doc. 19; Mem., Doc. 19-1.) Plaintiff Ricardo Romo opposed, and Defendant replied. (Opp., Doc. 20; Reply, Doc. 21.) At the hearing on the Motion, the Court requested supplemental briefing, which the parties timely filed. (Def. Suppl. Br., Doc. 25; Pl. Suppl. Br., Doc. 26; Def. Suppl. Reply, Doc. 27; Pl. Suppl. Reply, Doc. 28.) Having read all of the briefing, reviewed the underlying evidence, and heard oral argument, the Court GRANTS Defendant's Motion to Compel Arbitration, STRIKES the class action allegations, and STAYS the proceedings pending arbitration.

## I. <u>BACKGROUND</u>

Plaintiff brings this purported class action on behalf of himself and other similarly situated employees and former employees of Defendant. (*See* Compl., Doc. 1-1.) Plaintiff alleges the following claims: (1) failure to pay wages under the Fair Labor Standards Act, 29 U.S.C. §§ 203, 206, 207; (2) failure to pay overtime compensation, Cal. Lab. Code §§ 510, 1194, 1198; (3) failure to provide meal periods, Cal. Lab. Code §§ 226.7, 512; (4) failure to provide rest periods, Cal. Lab. Code §§ 226.7, 512; (5) failure to furnish accurate itemized wage statements, Cal. Lab. Code § 226; (6) failure to pay wages for hours worked, Cal Lab. Code §§ 1194, 1197, 1197.1, 558; (7) failure to pay wages at least twice in a calendar month, Cal. Lab. Code § 204; (8) failure to pay wages upon termination of employment, Cal. Lab. Code §§ 201–203; (9) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (10) enforcement of the Private Attorney General Act ("PAGA"), Cal. Lab. Code §§ 558, 2698, 2699. (SAC ¶¶ 36–150, Doc. 16.)

At issue in the instant Motion is an arbitration agreement set forth in the "Offer Letter" sent by Defendant to Plaintiff dated March 27, 2015. (Hudson Decl. ¶¶ 3–4, Doc. 19-3; "Offer Letter," Ex. A to Hudson Decl., Doc. 19-3.)

The Offer Letter, which offered Plaintiff a position of employment with Defendant, included the following arbitration provision:

> [W]e jointly agree to submit all [] disputes or claims [between employee and CBRE] to confidential binding arbitration and waive any right to a jury trial. The claims and disputes subject to arbitration include all claims arising from or related to your employment or the termination of your employment including, but not limited to, claims for wages or other compensation due[.] … All claims or disputes subject to arbitration … must be brought in the party's individual capacity, and not as a plaintiff or class member in any class, collective, or representative action.

(Offer Letter at 2.)

Further, the arbitration provision stated that arbitration between the parties "shall be conducted pursuant to the provisions of the arbitration rules of the state in which you are or were last employed by CBRE (e.g. in California, the California Arbitration Act) or in the absence of state law the Federal Arbitration Act." (*Id.*)

In order to accept the terms of the Offer Letter, Plaintiff was required to log in to Defendant's online employee portal, Candidate Gateway, using a unique username and password and to click a check box indicating acceptance. (Hudson Decl. ¶ 5.) Plaintiff performed this step on the same day he received the Offer Letter, March 27, 2015, at 1:04 p.m., as recorded by Candidate Gateway's time stamp software. (*Id.*; Candidate Page, Ex. B to Hudson Decl., Doc. 19-3.)

After accepting the terms of the Offer Letter, Plaintiff was hired by Defendant and worked as an employee until he began a leave of absence on September 26, 2016. (Hudson Decl. ¶ 6.) Plaintiff's employment was ultimately terminated on June 7, 2017. (*Id.*)

On September 22, 2017, Plaintiff filed this action, which Defendant thereafter removed to this Court. (Notice of Removal, Doc. 1.) On June 26, 2018, Defendant filed the instant Motion.

## II. <u>CHOICE OF LAW</u>

Defendant moves to compel arbitration pursuant to the Federal Arbitration Act ("FAA"). However, at the hearing on the Motion, the Court requested supplemental briefing on whether and to what extent California arbitration law applies in light of the contract term that "[t]he arbitration [] shall be conducted pursuant to the provisions of the arbitration rules of the state in which you are or were last employed by CBRE (e.g. in California, the California Arbitration Act) or in the absence of state law the Federal Arbitration Act." (Offer Letter at 2.)

In its supplemental brief, Defendant argues that the FAA applies, rather than California law, because the Offer Letter is an employment agreement and evidences a transaction involving interstate commerce. (Def. Suppl. Br. at 2–3.) Plaintiff argues that the parties have contracted to apply the California rules of arbitration, notwithstanding the default applicability of the FAA. (Pl. Suppl. Reply at 1–2.)

"[B]ecause the thrust of the federal law is that arbitration is strictly a matter of contract, the parties to an arbitration agreement should be at liberty to choose the terms under which they will arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 472 (1989) (internal citations omitted). Thus, where the parties "have chosen in their agreement to abide by the state rules of arbitration, application of the FAA to prevent enforcement of those rules would actually be 'inimical to the policies underlying state and federal arbitration law … .'" *Id.*

To determine whether the parties intended to incorporate California arbitration law, the Court applies state law principles of contract interpretation. *See id.* at 475–76. "The fundamental canon of interpreting written instruments is the ascertainment of the intent of

the parties." *Brookwood v. Bank of Am.*, 53 Cal. Rptr. 2d 515, 517 (Ct. App. 1996). "As a rule, the language of an instrument must govern its interpretation if the language is clear and explicit." *Id.* (citation omitted).

Here, the agreement provides that the arbitration is to be conducted pursuant to "the arbitration rules of the state in which [Plaintiff] [was] last employed by CBRE … ." (Offer Letter at 2.) Through this "clear and explicit," language, *Brookwood,* 53 Cal. Rptr. 2d at 517, the parties expressly, unequivocally incorporated California arbitration law to govern the arbitration of claims arising between them.

Still, Defendant objects that this term is limited to the "manner in which the '***arbitration'*** is to be '***conducted***' as opposed to the law governing the interpretation and enforceability of the **agreement** or **contract** itself." (Def. Suppl. Br. at 4 (emphasis in original).) That is, Defendant argues that this term incorporates only rules of "procedure," such as "who the arbitrator will be, where the arbitration will take place, and who will pay the arbitration fees," and therefore does not displace the FAA as the default governing law. (*Id.* at 5.) The Court disagrees. The plain language of the agreement incorporates, without qualification, the "rules of the state" in which Plaintiff was last employed. (Offer Letter at 2.) If the parties intended for this term to reach solely procedural aspects of the arbitration, they could have so designated. Moreover, the agreement goes on to provide that the FAA will apply *only* "in the absence of state law." (*See id*.) Thus, there can be little doubt that the parties intended state law, rather than the FAA, as the primary governing law.

*Warren-Guthrie v. Health Net*, which Defendant raises in its supplemental brief, is distinguishable on its facts to the extent it is still good law.[1] (*See* Def. Suppl. Br. at 4 (*citing* 101 Cal. Rptr. 2d 260, 268–69 (Ct. App. 2000)). In *Warren-Guthrie*, the California

---

[1] In *Cronus*, the California Supreme Court disapproved of *Warren-Guthrie* to the extent that it found the discretionary stay provision in the California Arbitration Act to be a rule of arbitrability, rather than a rule of procedure. *See Cronus Investments, Inc. v. Concierge Servs*, 107 P.3d 217, 224 (Cal. 2005) (discussing Cal. Civ. P. Code § 1281.2(c)). *Cronus* did not directly address the point of contract interpretation that Defendant urges here.

Court of Appeal construed the term "[a]ll Arbitration shall be conducted in accordance with the California Code of Civil Procedure, commencing with Section 1280" to incorporate only procedural rules governing the manner of arbitration, rather than substantive rules, such as those of arbitrability. 101 Cal. Rptr. 2d at 268–69. However, the arbitration provision in the Offer Letter is broader than the one in *Warren-Guthrie*; here, the parties generally incorporated the arbitration "rules of the state" of Plaintiff's employment, rather than specific code sections. Although the arbitration identifies the California Arbitration Act in a parenthetical as an example of certain rules that may apply, there is nothing in the agreement evidencing that the parties intended to limit the term at issue to specific provisions of California law.

As discussed further below with regard to procedural unconscionability, it is clear from the evidence before the Court that the Offer Letter is a standard agreement drafted by Defendant and provided to employees with little opportunity for negotiation of its terms. Consistent with the general principle that "ambiguities in standard form contracts are to be construed against the drafter," *Victoria v. Superior Court*, 710 P.2d 833, 835 (Cal. 1985), the Court will not read Defendant's asserted limitation into the agreement where the clear language of the contract does not so provide.

Thus, the Court will apply California arbitration law in deciding the Motion.

## **III. <u>LEGAL STANDARD</u>**

"In most important respects, the California statutory scheme on enforcement of private arbitration agreements is similar to the [FAA]." *Valencia v. Smyth*, 110 Cal. Rptr. 3d 180, 197 (Ct. App. 2010). Specifically, there is "a presumption in favor of arbitrability and a requirement that an arbitration agreement must be enforced on the basis of state law standards that apply to contracts in general." *Bono v. David*, 54 Cal. Rptr. 3d 837, 841 (Ct. App. 2007). Thus, the role of the Court is to determine whether the arbitration agreement "reasonably cover[s] the dispute as to which arbitration is requested." *Id.* at 842. "[T]he

burden [] fall[s] upon the party opposing arbitration to demonstrate that an arbitration clause *cannot* be interpreted to require arbitration of the dispute." *Id.* at 841 (emphasis in original). However, arbitration agreements may also "be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

In these analyses, a court may consider evidence outside of the pleadings, such as declarations and other documents filed with the court, using "a standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004); *see also Hadlock v. Norwegian Cruise Line, Ltd.*, No. 10-0187-AG (ANx), 2010 WL 1641275, at *1 (C.D. Cal. Apr. 19, 2010); *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1104 n.1 (9th Cir. 2010) ("We take . . . facts from the First Amended Complaint, on file in the district court, and declarations filed in support of and in opposition to the motion to dismiss. All are part of our record.").

## IV. ANALYSIS

### A. Clear Agreement to Arbitrate

"The threshold issue in deciding a motion to compel arbitration is 'whether the parties agreed to arbitrate.'" *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011) (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988)). "When determining whether a valid contract to arbitrate exists, we apply ordinary state law principles that govern contract formation." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)).

Here, Defendant has shown that the parties entered into a clear agreement to arbitrate. (Offer Letter at 2.) Plaintiff manifested his assent to the terms of the Offer Letter by clicking the check box on the Candidate Gateway and thereafter pursuing his

employment with Defendant.[2] (Hudson Decl. ¶¶ 4–5.) As Plaintiff concedes, the fact that he did not actually sign the agreement does not affect its existence. *See Craig v. Brown & Root, Inc.*, 100 Cal. Rptr. 2d 818, 819 (Ct. App. 2000) (finding that an employer's memorandum regarding its arbitration policy and the employee's continued acceptance of employment after receiving the memorandum constituted an enforceable arbitration agreement); *Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013) (noting, in an analogous context, that the FAA "does not require the written agreements to be signed").

Still, Plaintiff argues that his general assent to the terms of the Offer Letter does not show assent to the arbitration provision, which was "at the end of eight (8) other separate issues … ." (Opp. at 4.) As discussed fully *infra* with respect to procedural unconscionability, the arbitration provision did not constitute an unfair surprise simply because it was one of several terms in the two-and-a-half page Offer Letter. *See Roman v. Superior Court*, 92 Cal. Rptr. 3d 153, 161 (Ct. App. 2009) ("The arbitration provision was not buried in a lengthy employment agreement[,] [but] [r]ather was contained on the last page of a seven-page employment application.") In sum, "Plaintiff cannot avoid the terms of the contract by asserting that [he] failed to read it before signing." *Stover-Davis v. Aetna Life Ins. Co.*, No. 1:15-CV-1938-BAM, 2016 WL 2756848, at *5 (E.D. Cal. May 12, 2016).

Accordingly, Defendant has satisfied its burden to establish the existence of a clear agreement to arbitrate.

---

[2] Although Plaintiff suggests that there is no evidence of the security procedures Defendant used to ensure that a third party was not responsible for clicking the check box (*see* Opp. at 2), he does not actually challenge that he was the individual who clicked to accept the terms. To the extent Plaintiff is challenging Defendant's authentication of Plaintiff's acceptance of the Offer Letter, this argument lacks merit. Defendant has shown, through the declaration of its Senior Vice President of Human Resources, that Candidate Gateway required a unique username and password to access the Offer Letter, a candidate was required to execute a number of steps accept the terms, and Plaintiff's acceptance was automatically timestamped by the software. (Hudson Decl. ¶¶ 3–5.) *See Taft v. Henley Enterprises, Inc.*, No. SACV:15-1658-JLS (JCGx), 2016 WL 9448485, at *3 (C.D. Cal. Mar. 2, 2016).

**B. <u>Scope of the Agreement</u>**

Next, Defendant must demonstrate that the arbitration agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, the parties agreed to arbitrate "all claims arising from or related to [Plaintiff's] employment or the termination of [Plaintiff's] employment including, but not limited to, claims for wages or other compensation due[.]" (Offer Letter at 2.) However, all claims subject to arbitration must be brought in the party's individual capacity and not in a class, collective, or representative action. (*Id.*)

Defendant argues that all of Plaintiff's claims arise from his employment with Defendant and thus fall within the scope of the arbitration agreement on its face. (Mem. at 7–8.) Plaintiff makes two arguments in opposition. First, Plaintiff argues that California Labor Code § 229 permits litigation of his individual wage claims, notwithstanding the scope of the arbitration agreement. Second, Plaintiff argues that his PAGA claim is outside the scope of the agreement to arbitrate because it is a representative claim. (Pl. Suppl. Br. at 6–7.) The Court addresses each argument in turn.

**1. Labor Code § 229**

Labor Code § 229 provides that "[a]ctions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." Cal. Lab. Code § 229. Because § 229 "is found in article 1 of division 2, part I, chapter 1 of the Labor Code," it encompasses only those claims for "due and unpaid wages" that are brought pursuant to Labor Code §§ 200–244. *Lane v. Francis Capital Mgmt. LLC*, 168 Cal. Rptr. 3d 800, 806 (Ct. App. 2014). However, California courts have held that claims brought under § 226.7 for uncompensated meal and rest periods, under §§ 201–203 for waiting time penalties, and under § 226 for failure to provide itemized wage statements are not claims for "due and unpaid wages" and thus are not subject to § 229. *Id.*

Here, Plaintiff brings the following claims: (1) failure to pay wages under the Fair Labor Standards Act, 29 U.S.C. §§ 203, 206, 207; (2) failure to pay overtime compensation, Cal. Lab. Code §§ 510, 1194, 1198; (3) failure to provide meal periods, Cal. Lab. Code §§ 226.7, 512; (4) failure to provide rest periods, Cal. Lab. Code §§ 226.7, 512; (5) failure to furnish accurate itemized wage statements, Cal. Lab. Code § 226; (6) failure to pay wages for hours worked, Cal Lab. Code §§ 1194, 1197, 1197.1, 558; (7) failure to pay wages at least twice in a calendar month, Cal. Lab. Code § 204; (8) failure to pay wages upon termination of employment, Cal. Lab. Code §§ 201–203; (9) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (10) enforcement of the Private Attorney General Act ("PAGA"), Cal. Lab. Code §§ 558, 2698, 2699. (SAC ¶¶ 36–150.)

As Defendant correctly argues (Def. Suppl. Br. at 9), none of these claims come within the ambit of § 229 because none of them are characterized as claims for "due and unpaid wages" under Labor Code §§ 200–244. *Lane*, 168 Cal. Rptr. 3d at 806.

Therefore, Plaintiff cannot avoid the terms of the arbitration agreement under § 229.

**2. PAGA Claim**

Plaintiff's tenth claim is a PAGA enforcement action for civil penalties under Labor Code §§ 558 and 2699. (*See* SAC ¶¶ 146–50.) Claims for "civil penalties" brought under PAGA are categorically representative. *See Campos v. DXP Enterprises, Inc.*, No. 8:18-CV-00103-JLS (DFM), 2018 WL 3617885, at *5 (C.D. Cal. Mar. 14, 2018). Thus, to the extent Plaintiff's PAGA claim seeks civil penalties, it is outside the scope of the arbitration agreement, which requires all claims to be brought "in the party's individual capacity." (Offer Letter at 2.) However, Defendant argues that the portion of Plaintiff's PAGA claim brought under § 558 seeking "victim-specific" relief must be arbitrated because such relief is not properly characterized as a "civil penalty." (Mem. at 13–15.) Defendant's argument

is based on a split of authority among California and federal courts regarding the interpretation of § 558 in the context of FAA preemption.

Labor Code § 558 provides that an employer who violates certain provisions of the Labor Code shall be subject to a "civil penalty" in the amount of $50 per employee for initial violations, $100 per employee for subsequent violations, and "[w]ages recovered [for payment] to the affected employee." Cal. Lab. Code § 558(a). Although § 558 has no private right of action, it may be enforced by individual employees through PAGA actions. *Thurman v. Bayshore Transit Mgmt., Inc.*, 138 Cal. Rptr. 3d 130, 157 (Ct. App. 2012).

In *Iskanian*, the California Supreme Court held that "an employee's right to bring a PAGA action is unwaivable" because such an action is a representative action brought by an individual on behalf of the state. *Iskanian v. CLS Transportation Los Angeles, LLC*, 327 P.3d 129, 147–48 (Cal. 2014). The Court found that this rule was not preempted by the FAA because PAGA actions involve "an employee … bringing suit on behalf of the government to obtain remedies other than victim-specific relief, *i.e.*, civil penalties paid largely into the state treasury." *Id.* at 151. As referenced above, California and federal courts have split on whether claims for unpaid wages under § 558 seek "victim-specific" relief and thus may be arbitrated under *Iskanian*. *Compare Esparza v. KS Indus., L.P.*, 221 Cal. Rptr. 3d 594, 607 (Ct. App. 2017); *Mandviwala v. Five Star Quality Care, Inc.*, 723 F. App'x 415, 418 (9th Cir. 2018); *Cabrera v. CVS Rx Servs., Inc.*, No. C 17-05803 WHA, 2018 WL 1367323, at *5 (N.D. Cal. Mar. 16, 2018); *with Lawson v. ZB, N.A.*, 227 Cal. Rptr. 3d 613, 625 (Ct. App. 2017); *Whitworth v. Solar City Corp.*, No. 16-CV-01540-JSC, 2018 WL 3995937, at *5 (N.D. Cal. Aug. 21, 2018).

The Court need not take a side in this split here because the FAA is inapplicable. As pointed out by the *Esparza* court, "civil penalty" as used in *Iskanian* is a "term of art with a precise meaning" designed to avoid conflict with the FAA. 221 Cal. Rptr. 3d at 597 n.1. Because there is no concern regarding FAA preemption where the parties have contracted to apply California law, *see Volt*, 489 U.S. at 472, the Court need only look to

the plain language of § 558, which characterizes "unpaid wages" as a "civil penalty." *See* Cal. Lab. Code § 558(a). As the *Thurman* court held in interpreting California law prior to *Iskanian*, § 558 "is more reasonably construed as providing a civil penalty that consists of both the $50 or $100 penalty amount *and* any underpaid wages … ." *Thurman*, 138 Cal. Rptr. 3d at 157.

In sum, all of Plaintiff's individual wage claims are subject to arbitration. However, Plaintiff's PAGA claim for civil penalties is outside of the scope of the arbitration agreement and shall remain pending in this judicial forum.[3] *Campos*, 2018 WL 3617885, at *5.

### C. <u>Validity of the Agreement</u>

Although Defendant adequately demonstrates a clear agreement to arbitrate that encompasses Plaintiff's individual claims, Plaintiff argues that the arbitration agreement is unconscionable. (Opp. at 4–10.) "[A]rbitration agreements are valid, irrevocable and enforceable except upon grounds that exist for revocation of the contract generally." *Serpa v. Cal. Surety Investigations, Inc.*, 155 Cal. Rptr. 3d 506, 510 (Ct. App. 2013) (citations omitted). The party challenging the validity of the arbitration agreement bears the burden of proof. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1296 (9th Cir. 2006). Under California law, a contract is not enforceable if it is found to be unconscionable.

"Unconscionability under California law 'has both a procedural and a substantive element,'" and "[c]ourts use a 'sliding scale' in analyzing these two elements." *Kilgore v. KeyBank, N.A.*, 673 F.3d 947, 963 (9th Cir. 2012) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at

---

[3] Pursuant to *Iskanian*'s rule prohibiting waiver of the right to bring representative claims, the Court denies Defendant's request to strike Plaintiff's representative PAGA claim. (*See* Mem. at 12–13.) 327 P.3d at 147–48.

114. "No matter how heavily one side of the scale tips, however, *both* procedural and substantive unconscionability are required for a court to hold an arbitration agreement unenforceable." *Kilgore*, 673 F.3d at 963 (emphasis in original) (citing *Armendariz*, 24 Cal. 4th at 114).

**1. Procedural Unconscionability**

The Court first considers procedural unconscionability. Under California law, "[p]rocedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002)). "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation.'" *Id.* (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982)). "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectation of the weaker party." *Id.* (citing *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1571 (2009)). Here, Plaintiff argues that the arbitration provision in the Offer Letter is procedurally unconscionable for two reasons: (1) the Offer Letter is a contract of adhesion, and (2) Defendant failed to attach the relevant arbitration rules when it presented Plaintiff with the Offer Letter. (Opp. at 6–8.)

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Perez v. DirecTV Grp. Holdings, LLC*, 251 F. Supp. 3d 1328, 1344 (C.D. Cal. 2017). Generally, where an "arbitration agreement was presented to [an employee] on a take-it-or-leave-it basis, and his signature was a condition of employment with [the employer]," the contract is "a standard contract of adhesion imposed and drafted by [the employer]." *Sanchez v. Carmax Auto Superstores Cal., LLC*, 168 Cal. Rptr. 3d 473, 477 (Ct. App. 2014) (citing *Armendariz*, 24 Cal. 4th at 113). Defendant's Senior Vice

President of Human Resources states that an employment candidate cannot be hired without accepting the terms of the Offer Letter. (Hudson Decl. ¶ 5.) Although Plaintiff has not submitted a declaration specifically stating that he had no opportunity to negotiate these terms, the Court recognizes that "bargaining power is generally unequal in most employer-employee relationships," and it is rare that an employee would have such an opportunity. *Taft*, 2016 WL 9448485, at *5 (*citing Armendariz*, 24 Cal. 4th at 115). *See also Roman*, 92 Cal. Rptr. 3d at 160 ("[A]dhesion contracts in the employment context typically contain some measure of procedural unconscionability.").

Still, "the conclusion that the [Offer Letter] is a contract of adhesion does not weigh heavily in the procedural unfairness analysis." *Moreno v. Banamex USA*, No. CV-14-3049-PSG (PLAx), 2014 WL 12534772, at *4 (C.D. Cal. June 20, 2014); *Miguel v. JPMorgan Chase Bank, N.A.*, No. CV 12-3308 PSG (PLAx), 2013 WL 452418, at *4 (C.D. Cal. Feb. 5, 2013) ("Moreover, a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis.") This is especially true where, as here, the contract – though adhesive – does not involve unfair surprise or other "sharp practices" such as fraud, duress, or manipulation. *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 12 (Cal. 2016). Although the arbitration provision could have been more clearly highlighted within the Offer Letter, it is nonetheless set forth in its own separate section of the agreement; it is written in clear, unambiguous language; and Plaintiff was given six days to review and respond to the Offer Letter, which was just over two pages long. (*See* Opp. at 6–7.) *Roman*, 92 Cal. Rptr. 3d at 161 (finding a "limited" degree of procedural unconscionability where the arbitration provision was not "buried in a lengthy employment agreement"). Thus, in the absence of a meaningful showing of unfair surprise, the resulting degree of procedural unconscionability arising from the adhesive nature of the Offer Letter is minimal. *Taft*, 2016 WL 9448485, at *6.

Plaintiff's second point is that Defendant failed to provide a copy of the relevant arbitral rules, here the rules of the California Arbitration Act ("CAA").[4] (Opp. at 7–8.) While a party's "failure to attach [the referenced arbitration rules], standing alone, is insufficient grounds to support a finding of procedural unconscionability, it could be a factor supporting such a finding where the failure would result in surprise to the party opposing arbitration." *Campos*, 2018 WL 3617885, at *6. However, where the relevant arbitral rules are incorporated by reference into an arbitration agreement, the California Supreme Court has rejected the argument that the employer's failure to provide a copy "g[ives] rise to a greater degree of procedural unconscionability." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017) (*citing Baltazar*, 367 P.3d at 12). *Cf. Perez*, 251 F. Supp. 3d at 1345 (finding procedural unconscionability where, *inter alia*, the defendant withheld the complete terms of the arbitration agreement and did not attempt to incorporate the omitted terms by reference). While courts "may more closely scrutinize the substantive unconscionability" of the applicable rules, incorporation of the relevant rules by reference does not support a finding of oppression. *Poublon*, 846 F.3d at 1262.

In sum, the Court finds that Plaintiff has shown some degree of procedural unconscionability resulting from the adhesive nature of the Offer Letter. However, Plaintiff is still required to show substantive unconscionability in order to avoid arbitration. *Kilgore*, 673 F.3d at 963.

**2. Substantive Unconscionability**

"Substantive unconscionability addresses the fairness of the term in dispute." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010) (quoting *Szetela v. Discover*

---

[4] Although Plaintiff notes Defendant's failure to provide a copy of the relevant rules, Plaintiff does not argue that the incorporated CAA rules lack sufficient specificity to provide Plaintiff with adequate notice of the applicable procedures for arbitration. Therefore, the Court takes no position on whether the CAA's procedures (*see* Cal. Civ. P. Code §§ 1282, *et seq.*) are sufficiently comprehensive as compared to the rules of private arbitral bodies.

*Bank*, 97 Cal. App. 4th 1094, 1100 (2002)). Under California law, "[a] provision is substantively unconscionable if it 'involves contract terms that are so one-sided as to "shock the conscience," or that impose "harsh or oppressive terms."'" *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1573 (2009) (quoting *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1322 (2005)). "Thus, mutuality is the 'paramount' consideration when assessing substantive unconscionability." *Pokorny*, 601 F.3d at 997–98 (quoting *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004)).

Plaintiff's sole substantive unconscionability challenge concerns the adequacy of discovery afforded by the CAA, as set forth in Cal. Code Civ. P. § 1283.05. (Opp. at 8–9.) Specifically, Plaintiff argues that § 1283.05(e)'s requirement that the parties seek leave of the arbitrator in order to conduct depositions runs afoul of the discovery requirements set forth in *Armendariz*, 24 Cal. 4th at 105–06. (*Id.*)

The CAA provides the "right to take depositions and to obtain discovery regarding the subject matter of the arbitration." Cal. Code Civ. P. § 1283.05(a). Indeed, in *Armendariz*, the California Supreme Court specifically pointed to § 1283.05 as providing the "full panoply of discovery" necessary to allow a plaintiff to "adequately arbitrate [his] statutory claim[s]." 24 Cal. 4th at 105–06. The Court went even further, stating that parties are permitted to agree to "something *less than*" the discovery provided by § 1283.05 as long as the selected procedures allow for proper vindication of the claim at issue. *Id.* at 106. Thus, under the rules of the CAA, the parties are necessarily entitled to "discovery sufficient to adequately arbitrate their statutory claim[s]" under *Armendariz*.[5]

---

[5] Defendant urges (Reply at 7), and some courts have suggested, that since the Supreme Court's ruling in *Concepcion*, "limitations on arbitral discovery no longer support a finding of substantive unconscionability." *See Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 1007 (N.D. Cal. 2012). However, the Court need not reach whether *Concepcion* conflicts with *Armendariz* because it is clear that the discovery provided by the CAA is sufficient under *Armendariz*.

Therefore, Plaintiff has failed to show any substantive unconscionability arising from the arbitration agreement. Accordingly, the arbitration agreement remains valid and enforceable.

The Court GRANTS Defendant's Motion to Compel arbitration as to Plaintiff's individual claims.

**D. <u>Request to Strike</u>**

Defendant asks the Court to strike Plaintiff's class claims pursuant to the Offer Letter's term that "[a]ll claims subject to arbitration … must be brought in the party's individual capacity, and not as a plaintiff or class member in any class, collective, or representative action." (Mem. at 12–13.) Plaintiff does not oppose the request to strike the class allegations if the Court finds a valid agreement to arbitrate.[6] (Opp. at 10.)

Thus, in light of Plaintiff's non-opposition, the Court STRIKES the class allegations.

**E. <u>Request to Stay Proceedings</u>**

---

[6] The Court notes that under California law, class action waivers in employment agreements may be unenforceable in certain circumstances. *Garrido v. Air Liquide Indus. U.S. LP*, 194 Cal. Rptr. 3d 297, 306 (Ct. App. 2015) (discussing the continued viability of *Gentry* after *Concepcion* when California law applies). However, enforceability of the waiver requires analysis of four separate factors, *i.e.* "the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' rights to overtime pay through individual arbitration." *Id.* Neither in his Opposition nor in his two supplemental briefs did Plaintiff even raise the issue of enforceability of the class action waiver, let alone brief these four factors. In light of Plaintiff's apparent waiver of this argument, the Court will not engage in a multifactor analysis *sua sponte*.

As set forth above, the parties' arbitration agreement "encompasses the procedural rules set forth in the CAA, Cal Civ. P. Code §§ 1280, *et seq.*, "of which § 1281.2 is a part."[7] *Cronus Investments, Inc. v. Concierge Servs*, 107 P.3d 217, 224 (Cal. 2005).

Under § 1281.2(c) of the California Code of Civil Procedure, courts may make a discretionary determination regarding the order of proceedings if "there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary … ."[8] *See RN Sol., Inc. v. Catholic Healthcare W.*, 81 Cal. Rptr. 3d 892, 901 n.16 (Ct. App. 2008) (*citing* Cal. Civ. P. Code § 1281.2(c)).

The Court finds that § 1281.2(c) applies here.[9] Because Plaintiff's PAGA claim is entirely derivative of his wage claims, a determination of Plaintiff's PAGA claim "may make arbitration unnecessary" as to the majority of issues raised by Plaintiff's individual claims. Cal. Civ. P. Code § 1281.2(c). Although Defendant argues that individual

---

[7] Defendant argues that the parties must have specifically incorporated § 1281.2(c) for it to be applicable notwithstanding the general incorporation of the CAA. (Def. Suppl. Br. at 9.) However, in *Cronus*, the California Supreme Court held that § 1281.2(c) was a procedural rule, and therefore "we need not construe any ambiguities as to the scope of the arbitration provision against the application of [§] 1281.2(c)." 107 P.3d at 229. Accordingly, in the absence of any evidence that the parties specifically intended to *exclude* § 1281.2(c), "there is no reason to apply only some of California's arbitration rules and not others." *Breazeale v. Victim Servs., Inc.*, 198 F. Supp. 3d 1070, 1082 (N.D. Cal. 2016), *aff'd*, 878 F.3d 759 (9th Cir. 2017).

[8] The Court may also stay an order to arbitrate if "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions" and "there is a possibility of conflicting rulings on a common issue of law or fact." Cal. Civ. P. Code § 1281.2(c). Plaintiff urges that the state of California is a "third party" to Plaintiff's PAGA action, though he does not cite any case law in support of this argument. (Pl. Suppl. Br. at 5.) However, because the Court finds that the alternative stay provision of § 1281.2(c) applies as set forth above, the Court need not reach this argument.

[9] Defendant argues that Cal. Civ. P. Code § 1281.4 applies and requires a mandatory stay of the litigation. (Def. Suppl. Br. at 9.) § 1281.4 states that while a motion to compel arbitration is pending, a court shall, upon motion of a party, stay the action until the motion to compel is determined and, if arbitration is ordered, until an arbitration is had in accordance with the order to arbitrate. Accordingly, this provision mandates a stay only as to Plaintiff's arbitrable claims and does not bear on the Court's determination under § 1281.2(c) regarding the order of proceedings.

arbitration would still be necessary for a damages determination if Defendant were found liable under PAGA (Def. Suppl. Br. at 10), this argument cuts both directions: if Defendant is ultimately determined not to be liable for the PAGA claim, then the individual arbitration will clearly be unnecessary.

Thus, the Court must determine how to order the proceedings. As a threshold matter, the Court agrees with the parties that allowing both proceedings to go forward at the same time would be inefficient and could result in contradictory rulings because the proceedings involve the same factual and legal issues. *Campos*, 2018 WL 3617885, at *8; *Shepardson v. Adecco USA, Inc.*, No. 15-CV-05102-EMC, 2016 WL 1322994, at *6 (N.D. Cal. Apr. 5, 2016). Thus, the Court must answer the question left open by *Iskanian*, 327 P.3d at 155, which is whether to proceed first with the litigation or to stay the litigation and order arbitration.

On this point, Defendant argues that the Court should exercise its discretion to order the arbitration to proceed first because Plaintiff will not have standing to pursue his PAGA claim if he fails to prove Defendant's liability for his individual claims. (Def. Suppl. Br. at 10.) Plaintiff responds that litigation should proceed first because, even if he ultimately has no standing to pursue his PAGA claim, he could simply substitute in another representative to prosecute the PAGA claim. (Pl. Suppl. Reply at 3.)

The Court is persuaded that a stay of the litigation is the appropriate course here. If Plaintiff is determined not to be an aggrieved employee under PAGA, because either he settles his individual claims during the pendency of the arbitration or Defendant's policies and practices are found to comply with the law, then the PAGA claim should be dismissed. *See Kim v. Reins Internat. California, Inc.*, 227 Cal. Rptr. 3d 375, 379 (Ct. App. 2017). Moreover, one of the reasons for California's policy favoring the enforcement of arbitration agreements is the relative efficiency of arbitration. *Moncharsh v. Heily & Blase*, 832 P.2d 899, 902 (Cal. 1992). As Defendant pointed out at oral argument, if the PAGA representative action proceeds first, then issues of manageability and discovery will

be litigated before there is a determination of Plaintiff's standing. Thus, efficiency also favors a stay of the litigation.

Accordingly, the Court finds that the arbitration should proceed first and STAYS the instant proceedings.

## V. CONCLUSION

Based on the foregoing, the Court GRANTS Defendant's Motion to Compel Arbitration and STRIKES the class action allegations. Moreover, the Court STAYS the proceedings pending the parties' arbitration.

The parties are ORDERED to file a joint status report at the earlier of six months from the date of this Order or within **ten (10) days** of the completion of arbitration. This action shall remain stayed until further order of the Court.

DATED: October 03, 2018

JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE